# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:07-CV-168-DCK

| | |
|---|---|
| BELK, INC., and BELK INTERNATIONAL, INC., | ) ) ) |
| Plaintiffs, | ) ORDER |
| v. | ) ) |
| MEYER CORPORATION, U.S., and MEYER INTELLECTUAL PROPERTY LIMITED, | ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER IS BEFORE THE COURT** on the three motions to compel discovery (Document Nos. 103, 109, and 121). Specifically, the Court will consider the Plaintiffs' multi-part "Motion to Compel Production of Documents, Motion to Compel Answers to Interrogatories, and Motion for Expenses and Attorney's Fees Under Fed.R.Civ.P. 30(g)" (Document No. 103); the Defendants' "Cross-Motion to Compel and for Expenses and Attorneys' Fees." (Document No. 109); and the Plaintiffs' "Motion to Compel Regarding 30(b)(6) Depositions" (Document No. 121).

The Court held a status conference and motions hearing on January 22, 2009. For the sake of completeness, the Court has accommodated the parties' requests for extensions of time for additional briefing. The motions are now ripe for consideration. Having fully considered the record, including counsels' arguments at the hearing and the numerous related briefs and exhibits (Document Nos. 103, 104, 109 - 113, 118, 121, 122, 124, 127, 133, 141), the Court finds as follows:

## I. Background

On April 5, 2007, Plaintiffs ("Belk") received a "cease and desist" letter from Defendants ("Meyer"), threatening to sue for patent infringement relating to the sale and advertising of allegedly similar cookware. Belk promptly filed for declaratory judgment in this Court. Meyer filed a similar suit in federal court in Georgia, which was then transferred and consolidated with this case.

Belk's Amended Complaint seeks a declaration of 1) non-infringement, invalidity, and unenforceability of four specific patents; 2) no protectible trade dress; 3) no false advertising; 4) no unfair competition; and 5) no commercial torts. (Document No. 71).

Meyer counterclaimed, asserting claims for 1) trade dress misappropriation, and 2) unfair competition. (Document No. 80). Meyer essentially alleged that Belk's Biltmore line of silicone-handled cookware violates the trade dress rights of Meyer's "Anolon Advanced" cookware line. (Document No. 80). Meyer disclaimed the patents before the U.S. Patent and Trademark Office on or before March 13, 2008, thus eliminating any controversy as to the patents' validity, enforceability, or infringement. After a status and motions hearing on June 17, 2008, the Court granted the Defendants' partial motion to dismiss the patent infringement claims. (Document No. 99).

The parties have proceeded with discovery on the remaining claims pursuant to the Court's "Pretrial Order and Case Management Plan" (Document No. 79, "CMO"). Upon the parties' request, the Court entered a "Stipulated Protective Order" (Document No. 102). The Court observes that discovery has become unusually contentious, much to the detriment of the case. Respective counsel even argue at length about whether the parties have complied with their mutual obligation under Local Rule 7.1 to confer in good faith. This contentious, indeed combative, attitude of counsel is unproductive and has resulted in significant delay in the litigation. The Court respectfully suggests

(again) that counsel communicate promptly with each other in a civil manner. To their credit, counsel have now managed to narrow the discovery disputes presented in the present motions and have engaged in mediation, albeit without resolution.

## II. Pending Discovery Motions

In its first Motion to Compel (Document No.103), Belk seeks an order compelling Meyer:

– a) to produce documents responsive to Belk Requests for Documents Nos.1, 5, 6, 10, 13, and 15-20;

– b) to answer interrogatories fully;

– c) to provide witnesses to be deposed in Charlotte, North Carolina;

– d) for expenses and attorney's fees for Meyer's alleged failure to attend a Rule 30(b)(6) depositions in Charlotte, North Carolina.

In its Motion to Compel (Document No. 109), Meyer seeks an order compelling Belk:

– a) to produce documents responsive to Meyer's Requests for Documents #2-4, 6, 16, 19, 23-26, and 32;

– b) to produce attachments to previously produced emails;

– c) to produce a complete privilege log;

– d) for expenses and attorney fees for this motion (Document No. 109) and its response to Belk's motion to compel (Document No.104) for Belk's failure to confer in good faith as required by Local Rule 7.1.

In its second Motion to Compel (Document No.121), Belk seeks an order:

– a) compelling Meyer to provide "complete and non-evasive testimony" in response to Belk's Notice of Deposition pursuant to Rule 30(b)(6);

– b) declaring that a certain inadvertently-produced document is not privileged;

– c) requiring Meyer to respond to questions regarding the above document;

– d) requiring that the Rule 30(b)(6) deposition resume in Charlotte, North Carolina;

– e) for Plaintiff Belk's expenses and attorney fees for the motion.

As stated , the parties mediated this case on January 19, 2009, without resolution. They did, however, manage to narrow their discovery disputes significantly. On January 20, 2009, the parties filed a "Joint Status Report" (Document No. 141) informing the Court that they had been able to resolve many of the numerous discovery disputes in the three pending motions to compel. The parties indicated that three primary issues remained in contention. These issues concern Belk's Request for Documents No.1 (asking for "All correspondence to or from any third party and relating to any claim of ownership in, or intellectual property or infringement relating to, the Meyer Cookware"), Belk's Request for Documents No. 5 (asking for "All patent applications describing, disclosing or claiming any aspect of the Meyer Cookware"), and the further depositions of Meyer corporate representatives Dean Krause and Jay Zilinskas.

### III. Discussion

### A. Belk's Request for Documents No. 1

Belk moves for an order compelling Meyer to produce documents responsive to Belk's Request for Documents No.1, which seeks "All correspondence to or from any third party and relating to any claim of ownership in, or intellectual property or infringement relating to, the Meyer Cookware." (Document No. 104, Exh. 2).

Meyer objected on the basis that the request is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, but indicated that "relevant, non-privileged documents will be produced to the extent that they are within the possession, custody,

or control of Defendants and can be located after a reasonable search." (Document No. 104, p.2). Meyer thereafter produced documents on June 10, 2008, and June 27, 2008.

> Rule 26 (b) of the Federal Rules of Civil Procedure provides that:
>
>> "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."

Courts must strike a balance between the broad scope permitted by the civil rules and the requirement that such discovery be relevant. See *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (observing that the civil rules are given a "broad and liberal treatment" but that "discovery, like all matters of procedure, has ultimate and necessary boundaries"). Discovery is not limited to matters that will be admissible at trial so long as the information sought appears reasonably calculated to lead to the discovery of admissible evidence. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 29-30 (1984) (discussing Rule 26(b)(1)). "Parties must respond truthfully, fully, and completely to discovery, or explain truthfully, fully, and completely why they cannot respond." *Fisher v. Baltimore Life Ins. Co.*, 235 F.R.D. 617 (N.D.W.Va. 2006).

Belk generally complains that Meyer's document production "is long on bulk due to the production of a variety of documents not requested." (Document No. 104, p. 4). Belk contends that "Meyer has produced 2145 pages of documents, but bulk is not the issue....at least half of the documents produced have nothing to do with the issues in this case." (Doc. No. 111, p. 6). With respect to Belk's Request for Documents No. 1, Belk alleges that "Meyer has produced not one single document." (Document No. 111, p. 6).

Meyer indicates that discovery was "virtually complete" prior to the filing of Belk's motion to compel. (Document No. 110, p. 3). Meyer further indicates that it has "supplemented its production with over 400 p ages of documents since the motion was filed" and asked "Belk's counsel to identify exactly which items remain outstanding." (Document No. 110, p. 4, fn.2). Meyer indicates that it has produced "all relevant, non-privileged documents" responsive to this request. (Document No. 110, p. 6). Meyer asserts that it has "made repeated requests to Belk to identify with particularity just where Meyer's production is allegedly lacking." (Document No. 114, p. 4).

In the "Joint Status Report," Meyer agreed to " produce additional documents relating to Napa Style" but that it "will not produce any documents regarding "third party contacts relating to Meyer cookware." (Document No. 141, p. 2). Meyer also indicates that it "will further review third party documents issue" and "will further investigate documents relating to Dillard's Settlement Agreement and produce to Belk." (*Id*.).

With respect to Belk's Request for Documents No. 1, Belk explains that it wants production of all documents from a prior patent lawsuit captioned *Calphalon Corp. v. Meyer Corp., U.S.*, Case No. 2:05-cv-971 (E.D. Cal.). (Document Nos. 104, p. 8; 111, p. 6). Belk indicates that this litigation with Calphalon involved alleged patent infringement by Meyer. Belk contends that many of the requested documents are public records and are not subject to the confidentiality claimed by Meyer. (Document No. 104, pp.8-9). Belk points out that its " request did not extend just to the Calphalon case, but to any correspondence to or from any third party meeting the conditions set our in Request No.1." (Document No. 111, p. 6).

Meyer contends that any non-public documents from the Calphalon case are subject to a

restrictive confidentiality agreement that precludes Meyer from disclosing them. Meyer asserts that the cookware in the Calphalon case was entirely different from the cookware at issue in the present case and is wholly irrelevant here. Meyer notes that it prevailed on its assertion of non-infringement in that case. Meyer points to the partial dismissal in the present case and correctly asserts that no case or controversy remains in the present case regarding any alleged patent infringement. (Document No. 110, p. 7).

In any event, the Court need not reach these contentious issues because Belk's Document Request No. 1 is excessively broad. It seeks "all correspondence" from unidentified parties "relating" to a very wide subject matter. The request does not limit the time frame, does not identify any individuals or entities for the requested correspondence, and does not even describe any reasonably specific classes of documents. The request is excessively vague, as it seeks unspecified documents "relating to" any claim of ownership in, or intellectual property or infringement "relating to" the Meyer Cookware. Since Belk characterizes Meyer as the world's largest provider of cookware, the overbreadth of this request is readily apparent. It is difficult to discern what documents might actually be responsive to this attenuated request. Indeed, opposing counsel has repeatedly expressed frustration with the scope and breadth of the requested discovery. It would be unduly burdensome for defense counsel to comb through corporate records and past litigation files looking for a vaguely-described category of documents that might "relate to" any claims "relating to" Meyer cookware.[1] Nothing has prevented Belk from timely issuing a narrower and more precise request. The Court will

---

[1] To the extent Belk explains in its brief that it wants to know if Meyer asserted any inconsistent claims regarding trade dress in the Calphalon case, such information is presumably readily available from the public records in that case.

sustain the Defendants' objection to Belk Doc. Request #1 because, as written, it is overly broad.

### B.. Belk's Request for Documents No. 5

Belk's Request for Documents No. 5 seeks "All patent applications describing, disclosing or claiming any aspect of the Meyer Cookware." Meyer indicates that it produced the complete patent file applications, as requested, on September 3, 2008. (Document No. 110, p. 8). At the hearing on January 22, 2009, Belk's counsel acknowledged that he had received the patent application files from Meyer. This satisfies Request for Documents No. 5. Although Belk's counsel further indicated at the hearing that he would also like any "notes" or other memoranda concerning these patent applications, Meyer has fully responded to this discovery request as written. As Meyer has furnished the requested patent applications, Belk's motion to compel is moot with respect to Belk's Request for Documents No. 5.

### C. Further Deposition of Meyer Corporate Representatives

Belk seeks further deposition of Meyer representatives Dean Krause and Jay Zilinskas. Belk initially noticed Rule 30(b)(6) depositions in Charlotte, North Carolina, without specifying a date and without consulting defense counsel.[2] (See Document No. 110, p. 10, fn. 4). When Belk indicated the depositions would begin on August 4, 2008, Meyer promptly designated several corporate witnesses available for deposition in San Francisco, California (where the witnesses reside and the principal place of business for the corporate Defendants). Belk subsequently re-noticed the depositions for California, and on November 4-6, 2008, deposed four designated corporate representatives (Krause,

---

[2] Fed. R. Civ. P. 30(b)(1) provides that "[t]he notice *must* state the time and place of the deposition."

Zilinskas, Rae, and Wong) in California. (Document No. 122, pp.1-2). Belk's counsel indicated at the hearing that he had agreed, or at least acquiesced, to deposing these corporate representatives in California.

Plaintiff's counsel contends that at these depositions, "Meyer's counsel violated every principle of 30(b)(6) practice by bringing witnesses to the deposition who were not prepared to testify, and who were instructed not to testify regarding any fact not within their personal knowledge, and were instructed not to testify regarding the activities of any of Meyer's affiliated companies." (Document No. 133, p.2). Belk contends that "Meyer counsel would not allow Meyer's witnesses to answer dozens of questions, and attempts to get answers subject to later review by the court were met by obstinate refusals." (Id. at pp.2-3). At the hearing, Belk's counsel indicated he wanted to re-depose the witnesses in Charlotte and with instruction to answer the questions fully.

With respect to location, it is well-settled that the "deposition of a corporation through its agents or officers should normally be taken at the principal place of business of the corporation." *Turner v. Prudential Ins. Co. of America*, 119 F.R.D. 381, 383 (M.D.N.C.1988); 8 C. Wright & A. Miller, Federal Practice and Procedure, § 2112 at 409-10 (1970). "It will be presumed that the defendant will be examined at his residence or place of business or employment." 4 Moore's Federal Practice Sec. 26.70 [1-3], at 26-514 (collecting cases). As the federal court aptly pointed out in *Farquhar v. Shelden,* 116 F.R.D. 70 (E.D.Mich.1987):

> "[I]n federal litigation, in the absence of special circumstances, a party seeking discovery must go where the desired witnesses are normally located. *Salter v. Upjohn Co.*, 593 F.2d 649, 671 (5th Cir.1979); *Dunn v. Standard Fire Insurance Co.,* 92 F.R.D. 31 (E.D.Tenn.1981); *General Leasing Co. v. Lawrence Photo-Graphic Supply*, 84 F.R.D. 130 (W.D.Mo.1979). Underlying this rule appears

> to be the concept that it is the plaintiffs who bring the lawsuit and who exercise the first choice as to the forum. The defendants, on the other hand, are not before the court by choice. Thus, courts have held that plaintiffs normally cannot complain if they are required to take discovery at great distances from the forum. *See Work v. Bier,* 107 F.R.D. 789, 792 (D.C.1985)."

Belk has shown no persuasive reason for the Court to depart from the general rule requiring a defendant to be deposed where he resides or where the corporation has its principal place of business. If Belk wishes to re-depose the two corporate designees for Meyer (Krause and Ziliskas), Belk must do so in San Francisco, California, and only after consulting appropriately with opposing counsel to arrange a mutually agreeable date and time.

With respect to Belk's argument that Meyer's 30(b)(6) witnesses "were not prepared to testify, were instructed not to testify regarding any fact not within their personal knowledge, and were instructed not to testify regarding the activities of any of Meyer's affiliated companies," (Document No. 133, p.2), Belk's counsel attaches over one hundred pages of deposition transcript to illustrate these points. Belk requests that the Meyer representatives be ordered to testify "fully and non-evasively."

However, review of these transcript pages reflects that Belk's argument is over-stated and not entirely accurate. In the first place, almost all of the transcript pages concern the deposition of one witness, Mr. Dean Krause, the vice-president and general counsel for Meyer. Although Belk attaches 125 pages of exhibits, only two pages are from the depositions of other corporate witnesses, namely, Robert Rae (President of Meyer) and Jay Zilinskas. (Document No. 122-8, pp. 12-13). Those two pages do *not* reflect that these corporate witnesses were "unprepared" to testify in any way. *Id.*

In one instance, defense counsel objected to the questioning because the witness was there

pursuant to Rule 30(b)(6) "on behalf of the corporation" and that the questioning had "gone afield." (Document No. 122-8, p. 13, Rae Depo.).[3] In the other instance, defense counsel insisted properly that the witness was "here to talk about the topics for which he was designated." (Document No. 122-8, p. 12). In other words, these objections pertained to the scope of the questioning and do not reflect that the witnesses were unprepared or unable to testify on their designated topics. Moreover, the parties indicated in the "Joint Status Report" that any dispute regarding the deposition of Robert Rae has apparently been resolved. (Document No. 141).

The remaining deposition pages are from the deposition of Dean Krause, as a corporate representative for Meyer. Certainly, the attached excerpts show that the deposition was, at times, rancorous. In their joint status report, the parties indicate to the Court that "Meyer will not oppose Belk's request to depose the witnesses in their individual capacity for any follow up questions." (Document No. 141, p.2). When objecting at the deposition, Meyer's counsel had appropriately indicated that Belk could depose the witnesses as individuals if it wished, but that the Rule 30(b)(6) deposition questioning was limited to the topics designated for each representative.

Although Meyer agreed in the joint status report that Belk could depose the two witnesses, Belk's counsel expressed concern at the hearing about the reference to "individual capacity." Belk apparently wants the two witnesses to be deposed as corporate representatives pursuant to the requirements of Rule 30(b)(6). The parties are reminded that the two corporate witnesses may not

---

[3] The excerpt provided by Belk does not contain the actual question by Belk's counsel. In any event, Robert Rae was a corporate witness only for topics #1 ("the conception, research, design, development, manufacture, construction, assembly, operation, use and intended use of Anolon") and #17 ("the functionality or non-functionality of the different features on an Anolon pan"). (Document No. 122-3, p. 2).

be questioned beyond the scope of the designated topics.

**IT IS THEREFORE ORDERED** that:

1) Plaintiffs' "Motion to Compel" (Document No. 103) is **DENIED;** the motion is moot except as to Belk's Request for Documents No. 1; Defendant Meyer's objection to this request is **SUSTAINED;**

2) Defendants' "Motion to Compel" (Document No. 109) is **DENIED as moot;** and

3) Plaintiffs' "Motion to Compel Regarding Rule 30(b)(6) Depositions" (Document No. 121) is **GRANTED to the following extent:** the Rule 30(b)(6) depositions of the designated corporate representatives (Dean Krause and Jay Zilinskas), which were conducted on November 4-6, 2008, may resume in the same location in California at a mutually agreeable time; Belk's counsel shall limit his questions to the topics designated for each witness; and

4) As the parties have mutually indicated in their "Joint Status Report" that all other issues in their motions to compel have been resolved, the parties' respective requests for costs and attorney fees are **DENIED as moot**.

**IT IS SO ORDERED**.

Signed: March 13, 2009

David C. Keesler
United States Magistrate Judge