## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL CASE NO. 3:07-CV-168-DSC

| | | |
|---|---|---|
| **BELK, INC., and BELK**<br>**INTERNATIONAL, INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | **ORDER** |
| **v.** | ) | |
| | ) | |
| **MEYER CORPORATION, U.S., and** | ) | |
| **MEYER INTELLECTUAL** | ) | |
| **PROPERTY LIMITED,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on "Defendants' Motion for Costs and Attorney's Fees" (document #257) and "Memorandum in Support of Defendants' Motion for Costs and Attorney's Fees" (document #258) filed June 22, 2010; and "Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Attorney's Fees and Costs" (document #268) filed July 9, 2010. On July 19, 2010, Defendants filed their "Defendants' Reply In Further Support of Motion for Attorney's Fees and Costs" (document #269). On July 30, 2010, at the Court's direction, Defendants' filed a "Bill of Costs" (document #270). On August 13, 2010, Plaintiffs' filed their "Objection to Meyer's Bill of Costs" (document #271). On August 20, 2010, Defendants' filed "Defendants' Response to Belk's Objection to Bill of Costs" (document #272).

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). This Motion is now ripe for determination.

The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid the decisional process. At the Court's request, Meyer submitted to the Court unredacted copies of all documents

1

pertaining to its Motion for attorneys' fees and costs. Having fully considered the arguments, the record, the applicable authority, and these documents, the Court finds that Defendants' Motion for Costs and Attorneys' Fees shall be granted in part and denied in part, as discussed in detail below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants Meyer Corporation, U.S., and Meyer Intellectual Properties Limited (collectively, "Meyer" or "Defendants") are designers and suppliers of cookware in the United States including the brands Anolon, Farberware and KitchenAid. Plaintiffs Belk, Inc. and Belk International, Inc. (collectively, "Belk" or "Plaintiffs") own and operate a chain of retail department stores, which sell, among other products, various lines of cookware, including its private-label Biltmore Estate cookware.

On April 5, 2007, Meyer sent a letter to Belk alleging that Belk's Biltmore Estate cookware had "almost every design feature of our Anolon Advanced." (document #1, attachment #1). Meyer alleged that this was patent infringement, "appropriation of trade dress, false advertising, unfair competition and any number of other commercial torts." Id. The letter suggested that if Belk did not immediately "cease and desist" Meyer would file a lawsuit. Id.

Belk filed a Complaint (document #1) with this Court against Meyer on April 18, 2007, seeking a declaration of non-infringement and invalidity of patents, as well as declarations of non-infringement of trade dress, no false advertising, no unfair competition, and no commercial torts. On April 20, 2007, Meyer filed a complaint in the United States District Court for the Northern District of Georgia (Civil Case No. 1:07-CV-894) against Belk alleging patent infringement, trade dress infringement, and unfair competition. That case was subsequently transferred and consolidated with this case.

In a November 16, 2007 letter, Belk informed Meyer that it believed that the four design patents Meyer had asserted were invalid because the pots and pans shown in the patents had been

offered for sale by Meyer more than one year prior to the filing date of the patents in violation of 35 U.S.C. § 102(b). Belk requested that Meyer immediately dismiss its counterclaims for patent infringement, grant Belk a covenant not to sue with regard to the four patents, and reimburse Belk for its fees and expenses incurred to date in connection with the North Carolina and Georgia lawsuits. (document #268, attachment #9).

On December 4, 2007, Meyer contacted Belk stating that the claims of patent invalidity were unfounded and inaccurate, but noted that Meyer was "prepared to explore the possibility of reaching a satisfactory resolution." (document #268, attachment #10). In response, on December 10, 2007, Belk sent a letter to Meyer with additional information concerning its assertion about the invalidity of Meyer's patents and a proposal for settlement which included a dismissal of the action with prejudice, a retroactive paid-up license to Belk under the patents, a letter of apology to Belk, and reimbursement of Belk's attorneys' fees. (document #268, attachment #11). A telephone discussion with Meyer's attorney, Edward Naughton, led to an agreement on all of these issues except the reimbursement of Belk's attorneys' fees. (document #268, attachments #12 and #13).

On December 27, 2007, Belk filed a "Motion for Leave to File Amended Complaint" (document #58) requesting leave to assert a claim for a declaration of unenforceability of the patent-in-suit.

On January 10, 2008, Meyer sent a letter to Belk proposing a confidential settlement where: 1) Meyer would grant Belk a royalty-free, fully-paid-up license under the patents for Belk's Biltmore Estate cookware; 2) Meyer would release all claims regarding Belk's past sales of its Biltmore Estate cookware; 3) the parties would dismiss their claims and counterclaims with prejudice; and 4) the parties would each bear their own costs and attorneys' fees. (document #268, attachment #13). Over the next few weeks, the parties debated back and forth through emails, letters

3

and telephone conversations regarding the exact terms of the settlement. (document #268, attachments #14-17).

On January 29, 2008, Meyer sent Belk a letter indicating a belief that the parties were very close to settlement, detailing its settlement offer and enclosing its suggested language for a statement regarding the settlement. (document #268, attachment #15).  On February 5, 2008, Magistrate Judge David C. Keesler signed an Order granting Belk's Motion to amend its Complaint. (document #70). On February 6, 2008, Belk filed an Amended Complaint. (document #71).  On February 7, 2008, Belk sent Meyer a Settlement Agreement and Stipulated Dismissals for review and signature.  Belk noted in this letter that Meyer's statement regarding the settlement was not acceptable and enclosed a statement that Belk would agree to use. (document #268, attachment #16).  On February 25, 2008, Belk sent an email asking Meyer whether it would be responding to the February 7, 2008 letter. (document #268, attachment #17).

On March 13, 2008, Meyer contacted Belk, by telephone call and letter, to inform Belk that Meyer had changed counsel and that Meyer had disclaimed the patents that were the subject of this litigation. Meyer requested that Belk voluntarily dismiss the patent declaratory judgment claims. Belk responded that it would advise Meyer of its intentions in due course but not before March 18, when Meyer's answer or other response to the Amended Complaint was due. (document #268, attachment #18). Meyer stated that "[w]e look forward to proceeding with this action and Meyer's non-patent claims against Belk."  Id.

On March 18, 2008, Meyer filed its Second Amended Complaint and Counterclaims (document #80) and "Meyers' Partial Motion to Dismiss Plaintiffs' Amended Complaint for Declaratory Judgment Pursuant to Fed. R. Civ. P. 12(b)(1)" (document #81).  On April 4, 2008, Belk

filed "Plaintiffs' Motion Pursuant to 12(b)(6) Fed. R. Civ. P. To Dismiss Defendants' Trade Dress and Unfair Competition Claims" (document #83).

On July 7, 2008, Judge Keesler denied Belk's motion to dismiss Meyer's amended counterclaim and granted Meyer's motion to dismiss the patent infringement claims. (document #99). Thereafter, the parties proceeded with discovery on the remaining claims. Judge Keesler noted in an Order dated March 16, 2009, where he ruled on three motions to compel, that "discovery has become unusually contentious, much to the detriment of the case. Respective counsel even argue at length about whether the parties have complied with their mutual obligation under Local Rule 7.1 to confer in good faith. This contentious, indeed combative, attitude of counsel is unproductive and has resulted in significant delay in the litigation." (document # 157).

On November 3, 2009, Judge Keesler recused himself from the case (document #164) and the case was reassigned to the undersigned. On November 5, 2009, the Court issued an Order denying Belk's "Motion for Summary Judgment" and setting a trial date of February 1, 2010. (document #168). In the Order, the Court also encouraged the parties "to explore settlement of the remaining claim in light of the Court's ruling herein, and to consider whether returning to the previously-ordered mediation might be advisable." Id.

Mediation ultimately failed to resolve this matter.[1] On January 19, 2010, the Court continued the February 1, 2010 trial date due to Meyer's trial counsel's health. (document #182). The trial was rescheduled for May 24, 2010. Based on email communications between Belk and Meyer, it appears that Belk offered Meyer $25,000 in February 2010 to settle the case and then raised its offer to

---

[1] While the parties have alluded to facts surrounding the mediation, a mediation report was never filed with the Court and therefore, the Court cannot draw any conclusions regarding what happened at the mediation.

$50,000 on March 1, 2010. (document #269, attachment 2). Meyer countered that offer with an offer to settle for $250,000. Id. On May 12, 2010, Meyer contacted Belk and suggested that the parties meet in the middle and settle for $150,000 and a confidential release. Id. Belk responded that it was not willing to pay Meyer to settle the lawsuit and that the current offer would be for neither party to pay any funds to the other party, a mutual release of all claims, and a dismissal of the lawsuit with prejudice by both parties. Id.

On May 20, 2010, the Court conducted a telephone conference with the parties to discuss the pending trial and address the settlement posture of the case. After this telephone conference, Belk sent an email to Meyer stating that the offer to resolve the lawsuit by mutual dismissals and release of claims with neither party paying the other any funds was still open. (document #269, attachment #1). Meyer responded that it was quite willing to talk about settlement but that it did not believe $0 was a legitimate offer. Id. On May 21, 2010, Belk offered to settle for $50,000 (document #269, attachment #1). On May 22, 2010, Meyer responded that it would respectfully decline the offer and would settle for $250,000. Id.

On May 24, 2010, before the trial began, the Court held a final meeting with the parties to determine if settlement was a possibility. Belk stayed firm on its offer of $50,000. In response, Meyer reduced its demand to $150,000 in order to avoid the expense of trial. Belk refused the offer. The case proceed to trial and was tried before a jury from May 24, 2010 to June 4, 2010. During the trial, the jury heard testimony from eighteen (18) witnesses and examined over a hundred exhibits.

On June 4, 2010, the jury unanimously found that (1) Belk infringed on Meyers' Anolon Advanced trade dress and (2) Belk committed acts in violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 (1985), and awarded Meyer all profits

earned by Belk because of its infringement, totaling $420,000.  With respect to its unfair and

deceptive trade practice verdict, the jury specifically found that Belk: (1) distributed, marketed and

sold a private label Biltmore cookware line that was deceptively similar to Meyer's Anolon

Advanced cookware line; (2) after receiving product, sales and market information, as well as

images and samples of Meyer's Anolon Advanced cookware line, distributed, marketed and sold

a private label Biltmore cookware line that was deceptively similar to Meyer's Anolon Advanced

cookware line; and (3) proceeded to purchase a cookware design from Bonanza that was deceptively

similar to the design of Meyer's Anolon Advanced cookware line, even after learning that proposed

designs provided to and considered by Belk from Bonanza were currently on sale by Meyer.  Based

on these jury findings regarding unfair and deceptive trade practices, the Court trebled the damage

award.

On June 8, 2010, the Court entered its "Judgement on Jury Verdict" and ordered, among

other things, that Meyer "be awarded costs in accordance with Rule 54(d)(1) of the Federal Rules

of Civil Procedure, and therefore costs are to be taxed against Counter-Defendant Belk." (document

#250).

On June 22, 2010, Meyer filed the subject "Defendants' Motion for Costs and Attorney's

Fees" (document #257) which has been fully briefed and is, therefore, ripe for disposition.

## II. DISCUSSION

### A. Attorney's Fees

Meyer contends that it is entitled to an award of attorney's fees under either the Lanham Act,

15 U.S.C. § 1117(a), or the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen.

Stat. § 75-16.1.  Belk first argues that the Court should not consider this Motion because Meyer

failed to specifically seek attorneys' fees in its Second Amended Answer and Counterclaim (document #80). The Court must resolve this issue before reaching the merits of the Motion.

While a claim for attorneys' fees was contained in Meyer's original Answer and Counterclaim (document #23) as well as its Amended Answer and Counterclaim (document #36), Meyer's Second Amended Answer and Counterclaims omitted such a claim. "The general rule . . . is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect. Thus if an amended complaint omits claims raised in the original complaint, the plaintiff has waived those omitted claims." <u>Young v. City of Mount Rainer</u>, 238 F.3d 567, 573 (4th Cir. 2001). Therefore, Meyer did not specifically plead attorneys' fees.

Under Rule 9(g) of the Federal Rules of Civil Procedure, "[i]f an item of special damage is claimed, it must be specifically stated." Fed. R. Civ. P. 9. Special damages are defined as "those elements of damages that are the natural, but not the necessary or usual, consequence of the defendant's conduct, and typically stem from and depend upon the particular circumstances of the case." 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1310 (3d ed. 1998).

In <u>Atlantic Purchasers, Inc. v. Aircraft Sales, Inc.</u>, 705 F.2d 712 (4th Cir. 1983), plaintiff appealed the district court's denial of plaintiff's motion to amend its complaint following a jury verdict to include a trebling of actual damages and an award of attorneys' fees pursuant to the North Carolina Unfair and Deceptive Trade Practices Act. In affirming the district court's decision, the Fourth Circuit observed in a footnote that because plaintiff had failed to state specifically the claim for attorneys' fees in the complaint, the claim was barred citing Federal Rule of Civil Procedure 9(g) and <u>Maidmore Realty Co., Inc. v. Maidmore Realty Co, Inc.</u>, 474 F.2d 840,843 (3d. Cir. 1973) with the parenthetical "attorneys' fees are items of special damage for Rule 9(g) purposes." <u>Id.</u> at 716.

Belk argues that this case is the controlling Fourth Circuit precedent and therefore, because Meyer did not seek attorneys' fees in their pleadings, they are barred from recovering them.

Meyer argues that the statement in Atlantic Purchasers is buried at the end of a footnote and is the only sentence in the entire case that addresses the attorneys' fees issue. Meyer contends that this does not amount to controlling precedent in the Fourth Circuit. While the issue is only addressed in a footnote, the Court disagrees with Meyer regarding the significance of the Fourth Circuit's conclusion. The conclusion in Atlantic Purchasers that attorneys' fees are special damages and must be specifically pled under Rule 9(g) has been cited as the controlling rule in the Fourth Circuit by several other courts that have examined this issue. See In re American Cas. Co., 851 F.2d 794, 802 (6th Cir. 1988); Lund v. Citizens Financial Group, Inc., No. CV97-183-M, 1999 WL 814341 at *16 (D.N.H. Sept. 30, 1999); Bensen v. American Ultramar, No. 92 Civ. 4420 KMW-NRB, 1997 WL 317343 at *11 (S.D.N.Y. June 12,1997)("Attorney's fees have been deemed special damages by numerous Circuits, including the Third, Fourth, Fifth, Sixth and Eighth."); Scherman v. Kansas City Aviation Center, Inc., No. 92-2211-GTV, 1994 WL 675323, at *2 (D. Kan. Nov. 17, 1994); Cotton Bros. Baking Co., Inc. v. Industrial Risk Insurers, 102 F.R.D. 964 (W.D. La. 1984).[2] Furthermore, Atlantic Purchasers was cited in 5A Charles Alan Wright & Arthur R. Miller, Federal

_____

[2]It should also be noted that although not citing Atlantic Purchasers, the Fifth Circuit found that "[o]ur sister circuits routinely classify attorney's fees as special damages that must be specifically pleaded under Federal Rule of Civil Procedure 9(g)." United Industries, Inc. v. Simon-Hartley, Ltd., 91 F.3d 762, 764 (5th Cir. 1996) (citing Maidmore Realty Co., Inc. v. Maidmore Realty Co., Inc., 474 F.2d 840, 843 (3rd Cir. 1973)("Claims for attorney fees are items of special damages which must be specifically pleaded under Federal Rule of Civil Procedure 9(g)."); Western Casualty & Sur. Co. v. Southwestern Bell Tel. Co., 396F.2d 351, 356 (8th Cir. 1968) ("Claims for attorneys' fees are also items of special damage which must be specifically pleaded under Fed.R.Civ.P. 9(g)); In re American Casualty Co., 851 F.2d 794, 802 (6th Cir. 1988)). See also, National Liberty Corp. v. Wal-Mart Stores, Inc., 120 F.3d 913 (8th Cir. 1997) ("Attorney's fees are 'special damages' that parties are required to plead under Rule 9(g) of the Federal Rules of Civil Procedure.").

Practice and Procedure § 1310 (3d ed. 1998) for that authority's discussion of attorneys' fees as special damages that require particularized pleading.

Meyer argues that Belk's reliance on Rule 9(g) is misplaced and ignores Rule 54(d)(2). Rule 54(d)(2) provides, in pertinent part:

> (A) Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.
> (B) Unless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after entry of judgment.

Fed. R. Civ. P. 54. Meyer asserts that where the substantive law requires that attorneys' fees be proven as an element of damages at trial, a party may be required to formally plead the same under Rule 9(g). However, where an award of attorneys' fees is an issue to be decided at the conclusion of the action when the prevailing party has been identified, attorneys' fees are properly awarded under Rule 54(d)(2)(A) and the specific pleading of such fees in the complaint is not required.

Rule 54 was amended in 1993 in order "to provide for a frequently recurring form of litigation not initially contemplated by the rules-disputes over the amount of attorneys' fees to be awarded in the large number of actions in which prevailing parties may be entitled to such awards..." Fed. R. Civ. P. 54 Advisory Committee Notes. Meyer specifically focuses on the language in the Advisory Committee Notes that states "it does not [Rule 54(d)(2)(A)], however, apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury." Id. Meyer asserts that since the substantive law governing Meyer's counterclaims for trade dress infringement and unfair competition under North Carolina law does not require that attorneys' fees be proven as an element of damages at trial, Rule 54(d)(2) controls and Meyer did not have to specifically plead attorneys' fees.

While there is support in other Circuits for Meyer's argument that Rule 54(d)(2) controls in this situation and they were not required to specifically plead attorneys' fees, see Flynn v. AK Peters, Ltd., 377 F.3d 13, 26 (1st Cir. 2004); Tipton v. Mill Creek Gravel, Inc., 373 F.3d 913, 922-923 (8th Cir. 2004); Trepel v. Roadway Express, Inc., 64 F. Appx. 439, 443 (6th Cir. 2003), the Fourth Circuit has not ruled on this issue since the amendment of Rule 54 in 1993.

The Supreme Court has held that "[w]e give the Federal Rules of Civil Procedure their plain meaning and generally with them as with a statute, when we find the terms unambiguous, judicial inquiry is complete." Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 123 (1989) (citations omitted). Therefore, the Court finds that Rule 54(d)(2) does not operate independently of Rule 9(g) but rather in conjunction. While Rule 9(g) governs how special damages, in the instant case attorneys' fees, are to be plead, Rule 54(d)(2) addresses how a claim for attorneys' fees should be presented to the district court if plead properly but not proved as damages at trial. See Romaguera v. Gegnheimer, 162 F.3d 893, 895 (5th Cir. 1998) ("to be entitled to attorneys' fees, a party must (1) request attorneys' fees in its pleadings and (2) file a timely motion for attorneys' fees under Rule 54(d)(2) within fourteen days after the entry of final judgment"); United Industries v. Simon-Hartley, Ltd., 91 F.3d 762, 766 (5th Cir. 1996) ("Under the procedural rules that govern our courts [discussing in detail Rule 9 and Rule 54], attorneys' fees must be specifically requested in a timely fashion. This is accomplished by including a request for attorneys' fees in the pleadings and by timely filing a Rule 54(d) motion following entry of judgment, unless excepted from the motion requirement because fees were proved as damages at trial.").

The Court finds that the rule in Atlantic Purchasers that attorneys fees are special damages that must be specifically plead is binding precedent in this Circuit. Therefore, Meyer's attorneys' fees claim is barred because it was not specifically plead in its Second Amended Answer and

Counterclaim. Since Meyer has failed to adequately plead attorneys' fees, the Court does not have to determine whether Meyer is entitled to attorneys fees under the Lanham Act, 15 U.S.C. § 1117(a), or the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-16.1. Nevertheless, under Rule 54(c) the Court "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). Therefore, because the Court has the authority under Rule 54(c) to award Meyer attorneys' fees even though it was not plead properly under Rule 9(g), the Court will examine whether Meyer is entitled to attorneys' fees under either the Lanham Act, 15 U.S.C. § 1117(a), or the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-16.1.

The Lanham Act states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Determination of whether this standard has been satisfied is in the sole discretion of the Court. Shell Oil Co. v. Commercial Petroleum, Inc., 928 F.2d 104, 108 n. 6 (4th Cir. 1991) ("[t]he court has broad discretion to award any monetary relief necessary to serve the interests of justice."). While the statute does not define "exceptional case," the Fourth Circuit has held that

> Under 15 U.S.C. § 1117(a), a case is "exceptional" if the defendant's conduct was "malicious, fraudulent, willful or deliberate in nature." Scotch Whisky Ass'n v. Majestic Distilling Co., Inc., 958 F.2d 594, 599 (4th Cir. 1991). In other words, a prevailing plaintiff must "show that the defendant acted in bad faith." Id. See also Texas Pig Stands v. Hard Rock Care Int'l, Inc., 951 F.2d 684, 697 (5th Cir. 1992) (the term "exceptional" should be "interpreted by courts to require a showing of a high degree of culpability on the part of the infringer, for example, bad faith or fraud.").

People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 370 (4th Cir. 2001). Accord Employers Council on Flexible Compensation v. Feltman, No. 09-2085, 2010 WL 2545435, at *5-6 (4th Cir. June 21, 2010); Retail Services, Inc. v. Freebies Publishing, 364 F.3d 535, 550 (4th Cir. 2004). In addition, "even in exceptional cases, the award of attorneys' fees under the Lanham

Act is a matter of the Court's discretion based on the equities of each case." Buzz Off Insect Shield, LLC v. S.C. Johnson & Son, Inc., 606 F.Supp.2d 571, 591 (M.D.N.C. 2006)(citations omitted).

The prevailing party bears the burden of showing malicious, fraudulent, willful or deliberate conduct by clear and convincing evidence. Agri-Supply Company, Inc. v. Agrisupply.com, 457 F. Supp.2d 660, 666 (E.D. Va. 2006). Accord Vanwyk Textile Systems, B.V. v. Zimmer Machinery America, Inc., 994 F. Supp.350, 381 (W.D.N.C. 1997).

The Court finds that the case at bar fails to rise to the level of an "exceptional" case for the purposes of awarding attorneys' fees. In considering all of the circumstances in this case, even accepting the jury's findings, the Court concludes that the conduct by Belk in this case is not so fraudulent, malicious, or willful so as to render it "exceptional." Additionally, to the extent that Meyer contends that an award of attorneys' fees is appropriate based on the conduct of Belk during the course of this litigation, the Court finds that none of the conduct or positions taken by Belk during the litigation would establish "bad faith" or otherwise support an award of attorneys' fees. Both sides strongly contested the factual and legal issues involved in this case and as the Court stated to the parties before trial began, the case could go either way. Consequently, it is not appropriate to look back in hindsight and conclude that Belk litigated this case in "bad faith" simply because it lost at trial. See Vanwyk Textile Systems, 994 F. Supp. at 382 ("A party should not be penalized for defending or prosecuting a lawsuit when the party has a good faith belief in its position.")(citation omitted). Accordingly, Meyer's motion for attorneys' fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a), is denied.

Additionally, the Court finds that Meyer is not entitled to attorneys fees under N.C. Gen. Stat. § 75-16.1 which states that:

The presiding judge may, in his discretion, allow a reasonable attorney fee. . . upon

13

a finding by the presiding judge that:
> (1) The party charged with the violation has willfully engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter which constitutes the basis of such suit.

Id. § 75-16.1(1).  Based on a review of the entire history of this case, the Court finds that there was not an unwarranted refusal on Belk's part to fully resolve the matter.  As stated above, both sides strongly contested the factual and legal issues involved in this case and both sides seemed to believe they had the stronger hand at different points in the litigation.  However, as detailed in the factual section above, both sides attempted to settle the case on various occasions.  Therefore, the Court cannot conclude that Belk made an unwarranted refusal to settle the case.  Consequently, Meyer is not entitled to attorneys fees under N.C. Gen. Stat.  § 75-16.1 and its Motion is denied.

### B.  Costs

Meyer also requests an award of costs in the amount of $345,906.23 pursuant to 28 U.S.C. § 1920 and the Lanham Act, 15 U.S.C. § 1117(a). Under 15 U.S.C. § 1117(a), a prevailing plaintiff "shall be entitled. . .  to recover. . . the costs of the action."  The term "costs of the action" is not defined by the Lanham Act.  The Fourth Circuit has used the costs defined in 28 U.S.C. § 1920 to determine what costs are available under the Lanham Act.  People for the Ethical Treatment of Animals, 263 F.3d at 370-371 ("[W]e need not determine now whether the 'costs of the action' referenced in [the Lanham Act] are limited to those mentioned in § 1920 because the award of . . . costs under the Lanham Act is committed to the sound discretion of the Court . . .The district court was required to award [plaintiff], as the prevailing party, no more than those costs required by § 1920.")  Section 1920 provides in pertinent part:

> A judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees for the printed or electronically recorded transcripts necessarily obtained for use in the case;

> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2008). With regard to the expenses specifically identified as costs pursuant to 28 U.S.C. § 1920, the Court has discretion in determining and awarding such costs. See Oak Hall Cap and Gown Co. v. Old Dominion Freight Line, Inc., 899 F.2d 291, 296 (4th Cir. 1990).

Local Rule 54.1 sets forth certain categories of costs that may or may not be awarded to a prevailing party. The Rule states in pertinent part:

> (F) Taxable Costs. Items normally taxed include, without limitation:
> (1) those items specifically listed on the bill of costs form. The costs incident to the taking of depositions (when allowable as necessarily obtained for use in the litigation) normally include only the reporter's attendance fee and charge for the original transcript of the deposition;
> (2) premiums on required bonds;
> (3) actual mileage, subsistence, and attendance allowances for necessary witnesses at actual cost, but not to exceed the applicable statutory rates, whether they reside in or out of this district;
> (4) one copy of the trial transcript for each party represented by separate counsel; and
> (5) costs associated with private process servers.
> (G) Nontaxable Costs. Items normally not taxed include, without limitation:
> (1) multiple copies of depositions;
> (2) daily copy of trial transcripts, unless prior Court approval has been obtained;
> (3) copies of documents filed electronically; and
> (4) attorney fees and attorney travel expenses;
> (5) costs of shipping/mailing transcripts;
> (6) costs for computer aided legal research including paralegal charges and computerized indices or optical discs produced for the benefit of counsel;
> (7) costs associated with mediation;
> (8) copy costs for any documents filed or served in electronic format; and
> (9) *pro hac vice* fees.

LCvR 54.1. In addition to Local Rule 54.1, the Clerk of Court has provided a Bill of Costs

<u>Handbook</u> "to assist counsel in the preparation of bills of cost."  Office of the Clerk for the Western District of North Carolina, <u>Bill of Costs Handbook</u> (Feb. 10, 2003).  In this Handbook, section VI, Non-Taxable Costs, details the items which are not considered taxable and will generally be denied:

> A.  Attorney fees and travel expenses incurred in attending depositions, conferences and trial, as well as expenses incurred by investigations or site visits.
> B.  Word processing, typing charges, and copy charges which are incidental to an attorney's services.
> C.  Computerized legal research charges.
> D.  Paralegal expenses.
> E.  Mediation fees.
> F.  ASCII, CD-ROM, computerized indices or optical discs produced for the benefit of counsel.
> G.  Postage fees (other than for summons/subpoenas), delivery and notary fees; FEDEX type charges.
> H.  Long-distance telephone calls and fax charges.
> I.  Damage surveys.
> J.  Accountant's expenses.
> K.  Office overhead.
> L.  Pro Hac Vice fees.

<u>Bill of Costs Handbook</u> p. 13.

It is apparent to the Court that Meyer submitted its Bill of Costs (document #270) without reviewing Local Rule 54.1 and the <u>Bill of Costs Handbook</u>.  In its Bill of Costs (document #270), Meyer's costs include *pro hac vice* fees, computerized legal research charges, attorney travel expenses, postage fees, long-distance telephone calls and fax charges, overtime charges for paralegals, and mediation fees, which are all specifically not taxable costs under Local Rule 54.1 and the <u>Bill of Costs Handbook</u>.  In fact, in its most recent filing "Defendant's Response to Belk's Objection to Bill of Costs" (document #272), Meyer continues to argue that it is entitled to recover these costs without any mention of how such costs would be allowed under the Local Rule 54.1 and the <u>Bill of Costs Handbook</u>.  The Court finds that certain deductions must be made to Meyer's Bill of Costs (document #270), as discussed in detail below.

**1. Fees of the Clerk.**

Based on the Court's review of the submitted documents and the Bill of Costs, Meyer requests $2,350.00 for Fees of the Clerk. However, $2,000.00 of these costs are for *pro hac vice* fees which are considered nontaxable costs under Local Rule 54.1 and the <u>Bill of Costs Handbook</u>. Accordingly, the Court will deduct $2,000.00 from Meyer's Bill of Costs.

**2. Fees for service of summons and subpoena.**

Meyer requests $695.50 for fees for service of summons and subpoenas. Pursuant to Local Rule 54.1, this is a taxable cost, including the cost of private process servers. Accordingly, the Court will allow these costs.

**3. Fees for printed or electronically recorded transcripts necessarily obtained for use in the case.**

Meyer requests $31,148.97 for fees for printed or electronically recorded transcripts necessarily obtained for use in the case. As a general matter, under 28 U.S.C. § 1920(2), the costs of an original deposition taken by the prevailing party are recoverable to the extent that those depositions were "necessarily obtained for use in the case." The Fourth Circuit has held that even if depositions are not actually used at trial, the cost of the transcripts is recoverable if taking the deposition seemed reasonably necessary in light of the particular situation existing at the time of its taking. <u>LaVay Corp. v. Dominion Federal Savings and Loan Assoc.</u>, 830 F.2d 522, 528 (4th Cir. 1987). Therefore, the Court finds that the depositions were necessary within the meaning of 28 U.S.C. § 1920(2) and are taxable costs.

Based on the Court's review of the submitted invoices, Meyer has $19,578.62 in deposition costs with an additional $1,297.25 for the video deposition of Dean Krause, an additional $1,297.25 for the video depositions of Glen Ray Kelly and Louis Blount, IV, and $8,975.85 in unexplained

deposition costs[3]. Local Rule 54.1(G)(1) states that multiple copies of depositions are non-taxable costs. Additionally, the Bill of Costs Handbook states that costs of both a video deposition and a transcript, and multiple copies of depositions are not taxable costs. Bill of Costs Handbook, p. 9-10. The Fourth Circuit has held that the prevailing party may not recover costs for both the transcription and videotaping of a deposition unless the party can show that the costs were necessarily obtained for use in the case. Cherry v. Champion Int'l Corp., 186 F.3d 442, 448-49 (4th Cir. 1999).

Meyer does not provide any rationale for why the costs of the video depositions of Dean Krause, Glen Ray Kelly and Louis Blount, IV were necessary. Therefore, $2,594.50 will be deducted from Meyer's Bill of Costs. Additionally, Meyer does not provide any explanation for the additional $8,975.85 in deposition costs. The Court will not speculate as to these costs and $8,975.85 will be deducted from Meyer's Bill of Costs.

### 4. Fees for witnesses

Meyer requests $26,217.52 in fees for nine (9) witnesses. 28 U.S.C. § 1920(3) allows the prevailing party to tax witness fees subject to the provisions of 28 U.S.C. § 1821. Section 1821(a) provides that fees and allowances may be paid to a witness "in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States." Section 1821(b) requires that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance." Section 1821(c)(1) provides "[a] witness who travels by common carrier shall be paid for the actual expense

---

[3] The Court notes that these unexplained deposition costs could be for daily and realtime transcripts during the trial. Meyer attached as an exhibit to its Bill of Costs (document #270-attachment 3 p.43) an invoice in the amount of $8,296.00 for daily and realtime transcripts during the trial. However, Meyer never references this invoice as a necessary deposition cost in its Bill of Costs nor in its Response to Belk's Objection to Bill of Costs. Furthermore, even if this is the unspecified deposition cost, pursuant to Local Rule 54.1(G)(2), daily copies of trial transcripts are non-taxable costs unless prior Court approval has been obtained.

of travel. . ." Section 1821(d) provides for subsistence and hotel allowance. The statute provides in pertinent part:

> A subsistence allowance for a witness shall be paid in an amount **not to exceed the maximum per diem allowance** prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5, for official travel in the area of attendance by employees of the Federal Government.

18 U.S.C. § 1821(d)(2) (emphasis added). For fiscal year 2010, the per diem rate for Charlotte, North Carolina is $100 for lodging and $51 for meals and incidental expenses for a total of $151. This per diem rate does not include hotel taxes. Local Rule 54.1(F)(3) states that taxable costs include "actual mileage, subsistence, and attendance allowances for necessary witnesses at actual cost, but not to exceed the applicable statutory rates, whether they reside in or out of this district." LCvR 54.1(F)(3). The <u>Bill of Costs Handbook</u> states that witness fees "are not limited to the day the witness testifies but includes those days in which the witness necessarily attends the trial." <u>Bill of Costs Handbook</u>, p.10.

Because Meyer's claimed subsistence costs for each of its witnesses[4] exceeds the allowable $151 daily per diem rate, excluding hotel taxes, the Court will utilize the $151 per day per diem rate in determining the taxable subsistence costs for Meyer's witnesses and will not discuss whether each individual's subsistence costs are reasonable. The Court does look quite unfavorably upon several of the items which Meyer submits as taxable subsistence costs including pharmacy charges, hotel laundry services, hotel health club memberships, clothing purchases, and extravagantly expensive meals. Meyer even goes so far as to argue that it should be allowed to recover costs for hotel rooms at two separate hotels on the same night for witnesses who moved due to the noise created by a musical concert.

---

[4] The Court notes that Meyer did not request a subsistence cost for Marshall Bank.

### a. Dean Luca Krause

Mr. Krause is Vice President and General Counsel of Meyer Corporation. Meyer requests costs for Mr. Krause for ten (10) days of attendance as a witness, subsistence costs of $4,750.04 and mileage costs of $880.90. Belk argues that Mr. Krause served as a witness for two (2) days, one (1) day for deposition and one (1) day for trial and that his other days of attendance at trial were in his capacity as the representative of the company and not as a witness. The Court agrees. The Court will allow the statutory attendance fee of $40 per day for one (1) day of deposition and one (1) day of testimony, for a total of $80. Additionally, the Court will allow a subsistence per diem for two (2) days at a rate of $151 per day for a total of $302 plus hotel taxes of $38.36. Additionally, the Court will allow the mileage costs of $880.90 for Mr. Krause's flight from San Francisco to Charlotte, North Carolina. Accordingly, the Court will allow a total of $1,301.26 in witness fees for Mr. Krause.

### b. Quebec Lam

Mr. Lam is a resident of China and traveled from China to testify at trial on May 26, 2010. Meyer requests costs for Mr. Lam for four (4) days of attendance as a witness, subsistence costs of $1,004.33 and mileage costs of $2,253.60. Belk argues that Mr. Lam should only receive one (1) day of attendance fees plus related subsistence fees. Additionally, Belk argues that Meyer should have obtained Mr. Lam's testimony by other means and should not be taxed with the costs of Mr. Lam's airfare from China. The Court disagrees. The Court will allow the statutory attendance fee of $40 per day for four (4) days at trial, which includes three (3) days waiting to testify and one (1) day of testimony, for a total of $160. Additionally, the Court will allow a subsistence per diem for four (4) days at a rate of $151 per day for a total of $604 plus hotel taxes of $74.12. Additionally, the Court will allow the mileage charge of $2,253.60 for Mr. Lam's flight from Hong Kong to

Charlotte, North Carolina. The Court will allow taxi fares of $42.93. Accordingly, the Court will allow a total of $3,134.65 in witness fees for Mr. Lam.

### c. Suzanne Murphy

Ms. Murphy is Vice President of Marketing for Meyer Corporation. Meyer requests costs for Ms. Murphy for two (2) days of attendance as a witness, subsistence costs of $676.58 and mileage costs of $5,374.95, which includes a flight from Germany. Ms. Murphy was not deposed, but testified on May 26 and May 27, 2010. Belk argues that Meyer should have coordinated Ms. Murphy's travel schedule or found an alternate witness who did not have to fly from abroad. The Court disagrees. The Court will allow the statutory attendance fee of $40 per day for two (2) days for a total of $80. Additionally, the Court will allow a subsistence per diem for two (2) days at a rate of $151 per day for a total of $302 plus hotel taxes of $48.42. The Court will also allow the $3,803.60 for Ms. Murphy's flight from Germany to Charlotte, North Carolina. However, the Court will not allow the other travel costs that Meyer has submitted for Ms. Murphy. The dates on these entries range from May 16 to May 31, 2010. Meyer did not elaborate on why these travel charges were necessary and the Court will not speculate about these charges. Accordingly, the Court will allow a total of $4,234.02 in witness fees for Ms. Murphy.

### d. Bob Rae

Mr. Rae is President of Meyer Corporation. Meyer requests costs for Mr. Rae for eight (8) days of attendance as a witness, subsistence costs of $804.72 and mileage costs of $789.92. Mr. Rae was deposed for one (1) day and testified on May 26, 2010. Belk argues that Mr. Rae should only receive two (2) days of attendance fees plus related subsistence fees. Meyer argues that Mr. Rae arrived in Charlotte in advance of the date of his testimony because it was impossible to predict the specific timing of his testimony. The Court will allow the statutory attendance fee of $40 per day

for one (1) day of deposition and four (4) days at trial, which includes three (3) days waiting to testify and one (1) day of testimony, for a total of $200.[5]  Additionally, the Court will allow a subsistence per diem for three (3) days at a rate of $151 per day for a total of $453 plus hotel taxes of $55.59.  Additionally, the Court will allow the mileage costs of $433.85 for Mr. Rae's flight from Las Vegas, Nevada to Charlotte, North Carolina.  However, the Court will not allow the other travel costs that Meyer has submitted for Mr. Rae.  Meyer did not elaborate on why these travel costs were necessary or what they were, and the Court will not speculate about the costs.  Accordingly, the Court will allow a total of $1,142.44 in witness fees for Mr. Rae.

### e.  Penny Koppel

Meyer requests costs for Ms. Koppel for eight (8) days of attendance as a witness, subsistence costs of $777.72 and mileage costs of $884.02.  Ms. Koppel was not deposed but testified on May 25 and May 26, 2010.  Belk argues that Ms. Koppel should only receive two (2) days of attendance fees plus related subsistence fees.  Meyer argues that Ms. Koppel arrived in Charlotte in advance of the date of her testimony because it was impossible to predict the specific timing of her testimony.  The Court will allow the statutory attendance fee of $40 per day for four (4) days at trial, which includes two (2) days waiting to testify and two (2) days testifying, for a total of $160.[6]  Additionally, the Court will allow a subsistence per diem for four (4) days at a rate of $151 per day for a total of $604 plus hotel taxes of $74.12.  Additionally, the Court will allow parking fees of $88.00.  The Court will not allow the travel costs that Meyer has submitted for Ms.

---

[5]The Court notes that Mr. Rae's hotel charges are from May 24 to May 27, 2010, which would indicate attendance at the trial for four (4) days, yet Meyer requested eight (8) days of attendance fees.

[6]The Court notes that Ms. Koppel's hotel charges are from May 22 to May 25, 2010, which would indicate attendance at the trial for four (4) days, yet Meyer requested eight (8) days of attendance fees.

Koppel. Meyer simply submitted invoices that stated "Travel" but did not elaborate. The Court will not speculate about the costs. Accordingly, the Court will allow a total of $926.12 in witness fees for Ms. Koppel.

### f. Darrin Johnston

Meyer requests costs for Mr. Johnston for eight (8) days of attendance as a witness, subsistence costs of $736.42 and mileage costs of $165.00. Mr. Johnston was not deposed but testified on May 25, 2010. Belk argues that Mr. Johnston should only receive one (1) day of attendance fees plus related subsistence fees. Meyer argues that Mr. Johnston arrived in Charlotte in advance of the date of his testimony because it was impossible to predict the specific timing of his testimony. The Court will allow the statutory attendance fee of $40 per day for four (4) days at trial, which includes three (3) days waiting to testify and one (1) day of testimony, for a total of $160.[7] Additionally, the Court will allow a subsistence per diem for four (4) days at a rate of $151 per day for a total of $604 plus hotel taxes of $74.12. The Court will allow parking fees of $88.00. The Court will also allow the mileage costs of $165.00 for Mr. Johnston's travel from Clarksville, Georgia to Charlotte, North Carolina. Accordingly, the Court will allow a total of $1,091.12 in witness fees for Mr. Johnston.

### g. Jeffrey Kruskall

Meyer requests costs for Mr. Kruskall for two (2) days of attendance as a witness, subsistence costs of $382.22 and mileage costs of $1,811.90. Mr. Kruskall was not deposed, nor did he testify. On May 27, 2010 Mr. Kruskall was tendered as a witness on a damage issue not pled by Meyer and the Court excluded his anticipated testimony for that reason. Because he did not testify,

---

[7]The Court notes that Mr. Johnston's hotel charges were from May 22 to May 25, 2010, which would indicate attendance at the trial for four (4) days, yet Meyer requested eight (8) days of attendance fees.

Belk argues that Mr. Kruskall's costs are not taxable to Belk.  Meyer argues that it fully intended to present Mr. Kruskall as a witness and did not know that his testimony would be disallowed until he had already traveled to Charlotte.  The Court will allow the statutory attendance fee of $40 per day for two (2) days for a total of $80.   Additionally, the Court will allow a subsistence per diem for two (2) days at a rate of $151 per day for a total of $302 plus hotel taxes of $48.42.  The Court will allow $1,395.90 for Mr. Kruskall's flight.  However, the Court will not allow the other travel costs that Meyer has submitted for Mr. Kruskall.  Meyer did not elaborate on what these travel costs were and the Court will not speculate about the costs.  Accordingly, the Court will allow a total of $1,826.32 in witness fees for Mr. Kruskall.

### h.  Jay Zilinskas

Mr. Zilinskas is Managing Director for Meyer Corporation U.S.  Meyer requests costs for Mr. Zilinskas for three (3) days of attendance as a witness, subsistence costs of $1,334.63 and mileage costs of $1,715.70.  Mr. Zilinskas was deposed and testified on May 26, 2010.  Belk argues that Mr. Zilinskas should only receive two (2) days of attendance fees plus related subsistence fees. Meyer argues that Mr. Zilinskas arrived in Charlotte in advance of the date of his testimony because it was impossible to predict the specific timing of his testimony.  The Court will allow the statutory attendance fee of $40 per day for three (3) days, which includes one (1) day of deposition, one (1) day waiting to testify and one (1) day of testimony, for a total of $120.  Additionally, the Court will allow a subsistence per diem for three (3) days at a rate of $151 per day for a total of $453 plus hotel taxes of $55.59.  The Court will allow the mileage costs of $1,657.70 for Mr. Zilinskas' flight.  The Court will also allow $33.00 for taxi fare.  However, the Court will not allow the other travel costs that Meyer has submitted for Mr. Zilinskas.  Meyer did not elaborate on why these travel costs  were necessary and what they were, and the Court will not speculate about the costs.  Accordingly, the

Court will allow a total of $2,319.29 in witness fees for Mr. Zilinskas.

### i. Marshall Banks

Meyer requested costs for Mr. Banks for one (1) day of attendance as a witness, no subsistence costs and mileage costs of $34.87. Belk argues that Mr. Bank was not a witness and has no involvement in this case. However, Mr. Banks was deposed on January 14, 2010. Therefore, the Court will allow the statutory attendance fee of $40 per day for one (1) day. However, the Court will not allow the mileage costs that Meyer submitted for Mr. Banks because no miles are listed on the Bill of Costs and Meyer did not elaborate on what these travel costs are. The Court will not speculate about the costs. Accordingly, the Court will allow a total of $40.00 in witness fees for Mr. Banks.

Based on the above analysis of Meyer's witnesses, Meyer's request for $26,217.52 in costs for witnesses will be reduced by $10,202.30.

### 5. Fees for Exemplification and the Costs of Making Copies of Any Materials Where the Copies are Necessarily Obtained for Use in the Case

Meyer requests $10,825.43 for fees for exemplification and the costs of making copies necessarily obtained for use in the case. Copy fees are a taxable cost under 28 U.S.C. § 1920(4) when they are "necessarily obtained for use in the case." Local Rule 54.1(G) states that copies of documents filed electronically and copy costs for any documents filed or served in electronic format are non-taxable costs. Electronic filing became mandatory in the Western District of North Carolina on January 1, 2006. Therefore, all court documents in this case were filed and served electronically and any copy costs for these documents are non-taxable costs.

Belk argues that Meyer has provided no identification of what copies the claimed amount refers to, why they were "necessary" to the case or why they should not be excluded under Local

Rule 54.1. While Meyer did submit twenty-three (23) pages of invoices with its Bill of Costs that included charges for copying or printing of some kind, these invoices did not specify what was copied or why it was necessary to the case. See Ramonas v. West Virginia University Hospitals-East, Inc., No. 3:08-cv-136, 2010 WL 3282667, at *6-7 (N.D.W.Va. Aug. 19, 2010) ("the prevailing party must provide the Court with enough information to make a judgment as to the necessity of the copies"); Ford v. Zalco Realty, Inc., No.1:08-cv-1318, 2010 WL 1228046, at *4 (E.D.Va. March 25, 2010) ("The burden is on the party seeking recovery of photocopying costs to demonstrate the reasons for each copying charge."). For example, Meyer has submitted an invoice for $1,130.95 for "Outside printing/copying VENDOR: BlueStar Computer Solutions, Inc; INVOICE#63212; DATE 4/22/2010" without any further explanation.

Although the Court accepts that copying costs may be high in a case of this complexity, Meyer has failed to provide sufficient information for the Court to determine if all of these copying costs were necessary or simply additional copies of electronically filed documents. The Court does agree with Meyer that many of Meyer's trial exhibits were documents and the costs incurred by Meyer in making copies for use during trial are taxable costs. However, Meyer did not specify on invoices which copying charges or printing charges were for trial exhibits. Consequently, the Court in its discretion will award Meyer one-fourth of the fees requested for copies, in the amount of $2,706.36, reducing its Bill of Costs by $8,119.07.

### 6. Compensation of Interpreters and Costs of Special Interpretation Services Under 28 U.S.C. § 1828.

Meyer requests $420.04 for compensation of the interpreter services for the testimony of Quebec Lam. Pursuant to 28 U.S.C. 1920(g), this is a taxable cost. Accordingly, the Court will allow this cost.

### 7.  Other Costs-Fees Incurred by Law Firms and Meyer

Meyer requests a total of $253,550.57 for other costs.  Of this request, $53,837.62 is for costs incurred by the law firms and Meyer for computerized legal research charges ($5,683.97), long-distance telephone calls and fax charges ($225.82), Fed-Ex and postage fees ($4,569.70), attorney meals ($4,569.70), travel ($20,421.63) and hotel ($4,813.31) expenses, overtime charges for paralegals ($3,069.00), outside counsel fees ($8,554.97) and mediation fees ($1,843.26),  which are all specifically outside the scope of 28 U.S.C. § 1920 and non-taxable costs under Local Rule 54.1 and the Bill of Costs Handbook.   Accordingly, the Court will deduct $53,837.62 from Meyer's Bill of Costs.

### 8.  Other Costs-Expert Witnesses

Meyer requests $130,499.16 for costs incurred for retaining expert witnesses, specifically $108,984.16 for Professor Nicholas M. Didow and $21,515.00 for Arthur Cobb.  Under 28 U.S.C. § 1920(3), the costs of witnesses may be taxed as costs.  However, the Supreme Court held that expert witnesses fees are not recoverable unless a statute or contract between the parties explicitly provides for the recovery of such fees. See West Virginia Univ. Hospitals, Inc. v. Casey, 499 U.S. 83, 86-87 (1991); Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-445 (1987). Accord Employers Council on Flexible Compensation v. Feltman, No. 09-2085, 2010 WL 2545435, at *5-6 (4th Cir. June 21, 2010).  There is no statutory provision in the Lanham Act or in the North Carolina Unfair and Deceptive Trade Practices Act which provides for the recovery of expert witness fees. Consequently, Meyer's experts will only be entitled to the statutory fee under 18 U.S.C. § 1821, which has been explained in detail under the section regarding witness fees.

With regard to Professor Nicholas M. Didow, the Court will allow the statutory attendance fee of $40 per day for one (1) day of deposition and two (2) days at trial, which includes one (1) day

waiting to testify and one (1) day of testimony, for a total of $120. Additionally, the Court will allow a per diem subsistence for two (2) days at a rate of $151 per day for a total of $302 plus hotel taxes of $52. The Court will allow the airfare charge of $1,251.30 for Professor Didow's flight from Beijing, China to Charlotte, North Carolina. Belk argues that this is excessive and that Professor Didow resides in Chapel Hill, North Carolina and should have been able to attend the trial at minimal expense. However, the Court finds that in order to testify at trial Professor Didow had to travel from China where he was away on business and his airfare is a taxable cost. The Court will also allow parking fees of $30. Accordingly, the Court will allow a total of $1,755.30 in witness fees for Professor Didow.

With regard to Arthur Cobb, who testified regarding Belk's profits, the Court will allow the statutory attendance fee of $40 per day for three (3) days at trial, which includes one (1) day waiting to testify and two (2) days of testimony, for a total of $120. Additionally, the Court will allow a per diem subsistence for three (3) days at a rate of $151 per day for a total of $453 plus hotel taxes of $55.59. While it is likely that Mr. Cobb incurred travel expenses for his trip to Charlotte, Meyer did not provide any detailed information as to these costs. The Court will not speculate whether the "expenses" line for $1,867 on Mr. Cobb's June 21, 2010 invoice, which was attached to Meyer's Bill of Costs (document #270, attachment 2 p.6), is for travel costs. Consequently, no travel costs will be allowed for Mr. Cobb. Accordingly, the Court will allow a total of $628.59 in witness fees for Mr. Cobb.

Based on the above, Meyer's request for $130,499.16 in costs for expert witnesses will be reduced by $128,115.27.

### 9. Other Costs-Sanction Solutions-Technical Support

Meyer requests $32,691.15 for Sanction Solutions-Technical Support. Meyer argues that

its attorneys are not skilled in operating the equipment used for audiovisual displays, exhibits and animations during trial and that Sanction Solutions' fees are completely appropriate. The Court finds that this is not a proper cost as it appears to be incidental to counsel's services and it does not fall within the definition of "costs" under 28 U.S.C. § 1920. Accordingly, Meyer's Bill of Costs will be reduced by $32,691.15.

### 10. Other Costs-Hy Cite Corporation-3rd Party Subpoena

Another portion of Meyer's request for other costs is $36,522.64 for a third party subpoena for Hy Cite Corporation. Meyer gives no details in its Bill of Costs or in its Response to Belk's Objections to the Bill of Costs as to why this is a necessary cost that is taxable to Belk. The Court finds that this is not a proper cost as it appears to be simply a request for attorneys' fees and it does not fall within the definition of "costs" under 28 U.S.C. § 1920. Accordingly, Meyer's Bill of Costs will be reduced by $36,522.64.

In summary, Meyer's Bill of Costs, which initially requested a sum of $345,906.23, will be reduced by a total of $283,058.40. The costs recoverable by Meyer and taxed against Belk pursuant to Rule 54(d) and 28 U.S.C. § 1920 will be Sixty-Two Thousand, Eight Hundred and Forty-Seven Dollars and Eighty-Three Cents ($62,847.83).

For the foregoing reasons, Meyer's Motion for Attorneys Fees is DENIED. Meyer's Motion for Costs is GRANTED to the extent discussed in this Order. Accordingly, the Clerk of this Court is instructed to assess costs in favor of Meyer in the amount of Sixty-Two Thousand, Eight Hundred and Forty-Seven Dollars and Eighty-Three Cents ($62,847.83).

**SO ORDERED.**

Signed: August 30, 2010

David S. Cayer
United States Magistrate Judge